AO 106 (Rev 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Alabama

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 2:14mj175-SRW
Residence located at 55 Boathouse Road, Eclectic, )
Alabama )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Residence located at 55 Boathouse Road, Eclectic, Alabama,

located in the _____Middle_____ District of _____Alabama_____, there is now concealed *(identify the person or describe the property to be seized):*
evidence of criminal activity

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(a)(1)(A), 922(a)(5) and 922(e) | Firearms offenses |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Jennifer Rudden-Conway, ATF&E
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/31/2014___

*Judge's signature*

City and state: Montgomery, AL       SUSAN RUSS WALKER, Chief U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Jennifer A. Rudden-Conway, affiant, hereby depose and state the following:

I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), United States Justice Department, and have been so employed since June 18, 2001. I have completed Criminal Investigator School at the Federal Law Enforcement Training Center and New Professional Training Program at the ATF National Academy. I am currently assigned to the Montgomery Field Office in Montgomery, Alabama. As a result of my training and on-the-job experience as an ATF Special Agent, I have become thoroughly knowledgeable in the violations of the Federal firearm, arson and explosive laws to include various criminal statutes enacted in the Gun Control Act of 1968 and those set forth in the National Firearms Act.

As a result of my training and experience as an ATF agent, I am familiar with the federal laws concerning the dealing in firearms without a license and transferring firearms to out of state and out of country residents, which is the basis for this affidavit. All of the information in this affidavit has either been personally verified by me, obtained from personal interviews, or from other law enforcement officers.

This Affidavit is submitted in support of an application for a warrant to search the following properties and persons: the residence and all out buildings at **55 Boathouse Road, Eclectic, Alabama,** along with all vehicles and persons located at the premises (the "Subject Property").

### First Undercover Firearm Purchase from FOCIA

1. On or about On August 23, 2013, ATF Senior Special Agent ("SSA") Tully Kessler from the Omaha, Nebraska Field Office contacted the ATF Montgomery Field Office and provided information pertaining to an investigation involving subjects utilizing websites to traffic firearms nationally and internationally.

2. On August 7, 2013, SSA Kessler observed a posting on the "Black Market Reloaded" deep website for a "Grab Bag Mystery Hand Gun #1." The price for the handgun was listed as 15 Bitcoins, an online currency. SSA Kessler, acting in an undercover capacity, agreed to purchase the firearm from an unknown subject identifying himself by the screen name "iWorks." Approximately twenty minutes after agreeing to purchase the firearm, SSA Kessler received an email from iWorks questioning his purchase as a domestic buyer. Ultimately, iWorks agreed to sell the gun even though SSA Kessler provided a domestic mailing address, and advised that the gun would be received the next day, August 8, 2013. In

1

addition, iWorks advised that the firearm was a Smith & Wesson ("S&W") .40 caliber handgun that already had been pictured on the website.

3. On August 9, 2013 SSA Kessler received a package from the United States Postal Service. The large Priority Mail flat-rate box contained a S&W M&P Shield .40 caliber handgun, serial number HPP9188, along with two magazines, all inside of a plastic bag.

4. A trace of the firearm revealed that Alan Thomas Turner purchased the firearm from Gulf States Distributors in Montgomery, Alabama on July 29, 2013. I, ATF Special Agent Richie Carpenter and U.S. Postal Inspector Special Agent Brian Wilson met with Alan Turner at Baptist South Hospital, located in Montgomery, and he agreed to be interviewed. Alan Turner advised that in the Summer of 2013 he purchased a S&W M&P Shield, then approximately two weeks later he purchased a second one to give to his son for his birthday. Alan Turner advised that he showed the gun to his son, who did not like it. Mr. Turner said that he had no need for two of the same model handgun, so he listed the one he had bought for his son in the Bulletin Board, an Alabama-based publisher of classified advertisements.

5. Alan Turner advised that a man identifying himself as "Mike" contacted him and wanted to purchase the firearm. Turner met Mike at the Rite Aid pharmacy near Vaughn Road in Montgomery to make the exchange. Turner stated that Mike arrived in a gold Acura MDX SUV with Alabama license plate number 3A26T27, and was dressed in shorts and a button down shirt with a hat. Turner further stated that Mike appeared to be a businessman but in his opinion was very strange, and when he opened the passenger door of his vehicle it was very cluttered inside. Turner provided Mike's phone number as (334) 312-7596.

6. Turner stated that during the exchange, Mike told him that he sued the government for a living and made a statement about having a goal of accumulating five hundred guns. Mike asked Turner if he would take gold coins for the firearm, but Turner declined. Turner said Mike rushed the sale and left.

7. A query of the National Crime Information Center ("NCIC") database on November 15, 2013 revealed that Alabama tag 3A26T27 was currently registered to Presley Focia, with an address in Prattville, Alabama. Further investigation utilizing the Alabama Law Enforcement Tactical System ("LETS") database revealed that the vehicle was previously registered to Presley Focia's father, Michael Albert FOCIA, with an address of 204 Seminole Drive, Montgomery, Alabama.

2

8. Based on this information, I assembled a line-up of photographs including one of Michael Albert FOCIA taken on his date of arrest, August 11, 2013 and provided the line-up to Alan Turner on November 18, 2013, asking him if he could identify any of the pictures as the individual he knew as Mike and who bought the S&W handgun. Alan Turner reviewed the line-up and identified FOCIA without hesitation.

9. On November 18, 2013, I then met with Jessica Busby, an employee at the United Parcel Service ("UPS") store located on the Atlanta Highway. I provided the same line-up to Jessica Busby and asked her if she could identify anyone from the line-up as the individual. She identified FOCIA as an individual who mailed a package he claimed was a computer "mother board" from the UPS store on August 7, 2013.

10. A review of the ATF National Licensing Center by ATF Investigator Greg Griffin revealed that ATF has no record of a Federal Firearms License for FOCIA.

**August 2013 Arrest of FOCIA in Possession of a Firearm**

11. On November 18, 2013, I contacted the Opelika Police Department in reference to the firearm recovered from FOCIA. I spoke to Corporal Henderson who recalled the case and provided documentation pertaining to the arrest. Corporal Henderson advised that on August 11, 2013, the Opelika Police Department executed a vehicle stop on a silver Infiniti QX4 SUV with VIN number JNRDR09Y92W253303 for an expired tag. The license plate displayed on the vehicle, Alabama tag 3A26T27, was not the plate registered to the Infinity, but to a 2001 Gold Acura MDX, and had been issued to FOCIA. Officer Carswell attempted to stop the vehicle but the vehicle did not immediately stop. It did stop eventually, and the officer approached the vehicle. The driver, later identified as FOCIA, rolled the window up approximately four inches from the top. Officer Carswell asked the driver for his license and registration and in response the driver began filling out paperwork and asked for Officer Carswell's name and badge number. FOCIA failed to comply with the officer's request for information, and claimed the officer did not have authority to stop him.

12. Officer Carswell smelled an odor of marijuana and requested a K-9 unit and additional officers. FOCIA still refused to exit the vehicle. The K-9 unit alerted on the vehicle, indicating that the presence of the scent of narcotics was present. Officer Carswell ordered FOCIA out of the vehicle multiple times before FOCIA finally agreed to exit. FOCIA exited the vehicle with his hands up, then locked the car and dropped the keys through the open window.

3

13. Officers nevertheless made entry into the vehicle. A search of the vehicle yielded a Raven Arms, .25 caliber handgun, serial no. 1698398, between the driver's seat and center console. The officers determined FOCIA did not have a concealed weapon permit at the time, as his permit issued by Elmore County, Alabama had expired. FOCIA stated that he did not need a permit to carry a gun. Another officer on the scene, Lieutenant Healey, observed that the back of FOCIA's throat and tongue were green, that particles of what appeared to be marijuana were in FOCIA's teeth, and that a smell of marijuana was coming from FOCIA's person.

14. Upon arrest, FOCIA stated that he was under psychiatric care out of Montgomery but refused to provide his doctor's name. FOCIA told officers that he could not be arrested and that they did not know who they were "messing with." On December 11, 2013, Opelika Police Department Corporal Henderson confirmed with D&S Towing, who had taken possession of the silver Infinity QX4, that FOCIA had picked up the SUV from their lot.

**Second Undercover Firearm Purchase from FOCIA**

15. My investigation indicates FOCIA continued to actively market firearms for sale on the internet after his arrest in Opelika, but now on a deep website known as "Agora." Specifically, on March 13, 2014, there were four current listings of Glock handguns for sale on Agora by the user "Guns_Ammo." I believe Guns_Ammo is FOCIA's current user name on Agora because the Black Market Reloaded user Guns&Ammo, which was identified as FOCIA as established herein, posted a message on Black Market Reloaded on or about December 9, 2013 that he would be moving his operation to Agora where could be found at the user name "Guns_Ammo." In addition, the Guns_Ammo user on Agora acknowledged in a posting on or about January 15, 2014 that he had previously used the Black Market Reloaded website. The profile name "Guns_Ammo" was also linked to the screen name "RTBArms," also on the Agora website. Several firearms have been listed for sale on Agora under these two user names.

16. In order to investigate the vendor RTBArms, ATF SA John Harrell created an account on Agora named "gnomesayin." SA Harrell located a listing by RTBArms for a used Glock, Model 27, .40 caliber pistol with two (2) magazines for the price of $2,800, which was to be paid in bitcoins ("BTC"). SA Harrell began communicating with RTBArms about purchasing the Glock pistol. Because the gnomesayin account was newly created and had not yet received any positive feedback, RTBArms agreed to sell the Glock pistol only if the transaction were broken into two separate parts. The first part of the transaction would cover RTBArms' raw costs, like shipping, and would have to be finalized early ("FE"). In

4

FE transactions, the buyer releases the funds to the vendor before receiving the product. This is uncommon since the buyer assumes the risk of never receiving the order. The second transaction would place the funds for the remainder of the purchase into full escrow on Agora pending the arrival of the pistol.

17. On October 15, 2014, SA Harrell utilized $2,000 to purchase 4.5 BTC in person from a www.localbitcoins.com vendor identified as a female with the initials of "RK." SA Harrell placed the BTC into an electronic bitcoin wallet that contained leftover BTC purchased for an unrelated investigation. On October 15, 2014, SA Harrell placed the two-part order for the used Glock, Model 27, .40 caliber pistol and two (2) magazines. The final negotiated price for the first transaction was $1,150. As requested, the funds for the first transaction were released. The final negotiated price for the second transaction was $1,500. The funds for the second transaction were placed into escrow on Agora.

18. SA Harrell instructed RTBArms via an encrypted message to ship the pistol to: Jon Hoffman, P.O. Box 629, Newark, New Jersey 07101. On October 16, 2014, RTBArms sent a message indicating the package had been shipped and to expect it to arrive on Friday, October 17, 2014; or Saturday, October 18, 2014.

19. On October 27, 2014, United States Postal Inspector Donna Algieri confirmed the receipt of a package to P.O. Box 629, Newark, New Jersey, containing a black firearm with two (2) magazines (Glock, Model 27, .40 caliber handgun, serial number RZC194), the same firearm purchased by gnomesayin.

20. The package was addressed to Jon Hoffman, P.O. Box 629, Newark, New Jersey 07101-0629, with a return address of Will Wylong, Kyocera, 592 George Todd Dr., Montgomery, Alabama 36117-2206.

**The Subject Property**

21. The Subject Property sought to be searched is 55 Boathouse Eclectic, Alabama. Repeated surveillance of FOCIA and his vehicle have confirmed that FOCIA is using this property as his residence. For example, on May 15, 2014, FOCIA's silver QX4 Infinity was observed parked under a carport located directly adjacent to a residence at 55 Boathouse Road, Eclectic, Alabama.

22. On May 16, 2014, I and SA Richie Carpenter travelled to Boathouse Road, Eclectic, Alabama and observed the silver Infinity QX4 departing the carport adjacent to 55 Boathouse Road. SA Carpenter and I made visual contact with the driver of the silver Infinity QX4 and confirmed it

5

to be FOCIA with a dog in the passenger seat.

23. On today's date, October 31, 2014, I again conducted surveillance of FOCIA to determine whether he is still residing at 55 Boathouse Road. This morning I was able to confirm, again through physical surveillance, that FOCIA's silver Infinity QX4 was parked at the carport adjacent to 55 Boathouse Road.

24. In addition to physical surveillance of FOCIA and his vehicle at this location, I was advised by Montgomery Police Department Captain Scott Tatum that he spoke with Ronald Robertson, the owner of the property located at 55 Boathouse Road, Eclectic, Alabama, on today's date, October 31, 2014. Robertson confirmed to Captain Tatum that a man named "Mike," is currently leasing the property from Robertson. I also learned from Captain Tatum that Mike's lease expires today and he is expected to be moving out of the property no later than tomorrow.

25. I have participated in and have knowledge of the execution of several search warrants involving firearms. Based on this experience and knowledge, I know that persons possess in their residences, businesses, other real property and vehicles over which they have dominion and control, documents which indicate their occupancy and/or ownership, such as: personal mail, checkbooks, identification, notes, correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs, leases, mortgage bills, vehicle registration information, ownership warranties, receipts for vehicle parts and repairs and telephone answering machines.

26. Further, based on my training, experience, and participation in investigations of firearms offenses and execution of search warrants, I know that unlicensed firearms dealers often store their firearms in their residences and/or their vehicles; that firearms dealers often keep sales records, receipts, bound books and/or journals disclosing details related to their sales of firearms; that firearms dealers often keep purchase records, receipts, and other documents related to their purchases of firearms that are later sold illegally; and that both these firearms and these records are commonly maintained where the dealers have ready access to them, such as in their residences or vehicles. As a result, I seek authorization to search for and to seize all firearms or records related to firearms, as further described in Attachment B, located on the Subject Property

27. Based on my training, experience, and participation in investigations of firearms offenses, I also know that it is common for firearms dealers to store data related to their activities on computer hard drives and external storage devices. Specifically, my investigation indicates FOCIA used a computer, tablet, smartphone or another internet-enabled device to market

6

his firearms on the deep websites referenced above and to negotiate the sales described above, and that he did so as recently as October 16, 2014. As a result, I also seek authorization to search for and seize any such device, as further described in Attachment B.

**Conclusion**

Title 18, United States Code, Section 922(a)(1)(A) makes it unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

Title 18, United States Code, Section 922(a)(5) makes it unlawful for any person to willfully sell, trade, give, transport or deliver a firearm to another person who resides in another state.

Title 18, United States Code, Section 922(e) makes it unlawful for any person to willfully deliver a firearm to a common carrier without written notice.

Based upon the information set forth herein, there is probable cause to believe that on the premises, property, vehicles and persons described herein there is to be found fruits, evidence and instrumentalities of criminal offenses against the United States, to include Title 18, United States Code, Sections 922(a)(1)(A), 922(a)(5) and 922(e). As a result, I request issuance of a search warrant authorizing the search and seizure of all items described in Attachment B, incorporated herein and attached.

Jennifer Rudden Conway
Senior Special Agent, ATF

SUBSCRIBED and SWORN before me
this 3/1st day of October, 2014.

CHIEF U.S. MAGISTRATE JUDGE

7

## Attachment B

### DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED

The property to be seized pursuant to this warrant is described as follows: (1) firearms and ammunition on the Subject Property; (2) records and documents, including, but not limited to, books, forms, letters, credit card receipts, cash receipts, receipt books, sales records, bound books, journals, applications, notes, and any other documents dealing with, evidencing or relating to firearms sales, purchases, ownership or transfers; (3) computers, tablets, smartphone or other internet-enabled devices and other media storage devices, including, but not limited to, floppy disks, hard disks, CDs, DVDs or other computer media, to include the computer or central processing unit, hard drives, and microfilm or microfiche or other pictures or documents containing records of firearms sales, purchases, ownership or transfers; (4) contraband; (5) indicia of ownership/residency for the Subject Property.